# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 5:20 CR 13-KDB |
| | ) | |
| | ) | **FACTUAL BASIS** |
| v. | ) | |
| | ) | |
| (1) RICHARD ALLEN CLARK | ) | |
| | ) | |

NOW COMES the United States of America, by and through William T. Stetzer. Acting United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

## Background

1. The defendant, RICHARD ALLEN CLARK (CLARK) was a resident of Lenoir, North Carolina and the office manager and bookkeeper for a partner in for Victim Company #1 and Victim Company #2 (collectively "the Victim Companies"). The Victim Companies are in the tree nursery business and are owned by the same family.

2. Beginning in and around 2003 and continuing until on or about May 31, 2019, CLARK enjoyed a special position of trust with the owners of the Victim Companies. His duties included bookkeeping using QuickBooks software, payroll, paying vendors, and reconciling the Victim Companies' bank accounts.

3. CLARK began stealing from his employers no later than 2013. At first, CLARK would create a check payable to himself, print the check and then immediately change the description and purpose of the check in QuickBooks to hide the payee information from the owners and the victim companies' accountant.

## Count Three
## The Mail Fraud Scheme

4. Beginning in and around October 1, 2016 and continuing until on or about May 31, 2019, CLARK took advantage of a change in Victim Company #1 address to devise a scheme to defraud the Victim Companies using the United States mail. In 2016, Victim #1 closed its office at the Riverside Drive address. Around that time, Victim #1's owners decided it no longer needed a bank account at Capital Bank (formerly the Bank of Granite and Community Bank) in Lenoir, North Carolina and directed CLARK to close it. However, CLARK did not close the account, but secretly used the Capital Bank account to steal funds from the Victim Companies. CLARK would instruct customers to wire or mail their checks payable to Victim #1 and deposit them into the Capital Bank account. CLARK used a mailbox at the Riverside Drive address to receive customer checks and statements and correspondence from Capital Bank without his employer's knowledge.

5. CLARK would also manually deposit customer payments into the "closed" Capital Bank account. CLARK received customer payments at the Riverside Drive address via U.S. mail. CLARK would on occasion pick up checks directly from the customer. CLARK then wrote checks to himself from the Capital Bank account, forging the signature of Victim Companies' owner. CLARK either cashed or deposited approximately $1 million in payments due to the Victim Companies into one of his personal bank account.

6. One such mailing was a payment from Customer #1 based in Troy, Michigan. On or about January 10, 2019—the date on Customer #1's check— CLARK caused Customer #1 to send a check by U.S. mail to Victim #1 in the amount of $26,625, which check CLARK deposited into Victim #1's Capital One account. Thereafter, CLARK withdrew the proceeds of Customer #1's check for his own personal use in the manner described herein.

7. At all times material to CLARK's scheme to defraud the Victim Companies using the United States mail, Clark acted with the intent to defraud the Victim Companies.

## Count Ten
## False Income Tax Return

8. CLARK filed Form 1040, U.S. Joint Individual Income Tax Returns for the tax years 2013 through 2018. For tax years 2013 through 2018, CLARK filed "Married Filing Joint," claiming one dependent. These tax returns included CLARK's W2 wages from his employment with the Victim Companies. CLARK's accountant in Lenoir, North Carolina filed his 2018 tax return electronically.

9. On or about February 5, 2019, CLARK electronically signed a Form 1040, U.S. Joint Income Tax Return for the tax year 2018, which he verified with a written declaration that it was made under the penalties of perjury.

10. However, CLARK then knew that this tax return was not true and correct as to every material matter because it stated that the joint income for CLARK and his wife was

approximately $53,466. However, CLARK knew that his joint income in 2018 was more than $320,000, including the funds he stole from the Victim Companies.

11. CLARK's bank accounts show that he deposited approximately $1,030,000 in unreported income per year for tax years 2013-2018. The total tax loss from his unreported personal income for these years is at least 203,000, but not more than $250,000.

12. CLARK's income tax returns were filed with the Internal Revenue Service.

13. At all times material to CLARK's false declarations on his income tax returns, he acted willfully—that is he acted voluntarily with the knowledge that signing tax returns with deliberately unreported income is a violation of his legal duty to file tax returns that correctly state his income.

## Count Eleven
## Money Laundering

14. CLARK was the authorized signatory on personal checking account no. XXXX XXXX7856 at Bank of America, personal checking account no. XXXX9028 at Capital Bank, and personal checking accounts XXXXXXXX2806 and XXXXXXXX2830 at SunTrust Bank. CLARK used these accounts to deposit funds he embezzled from the Victim Companies, including funds stolen with his use of the U.S. mail. CLARK comingled embezzled funds with his legitimate payroll checks into these various personal bank accounts in order to disguise the nature, source, ownership, and control of the proceeds of his embezzlement and mail fraud scheme.

    a. From January 2013 through June 2019, CLARK deposited approximately $775,000 in funds fraudulently obtained from the Victim Companies into his Bank of America personal checking account. CLARK withdrew approximately $800,000 from his Bank of America account, including approximately $70,000 to pay his mortgage at JPMorgan Chase Bank (Chase), approximately $50,000 to buy and install a home theater system, and the remaining funds to pay for his personal lifestyle of dining out, shopping, traveling, and automobile payments.

    b. From January 2013 through June 2019, CLARK deposited approximately $350,000 in funds fraudulently obtained from the Victim Companies into his Capital Bank personal checking account. CLARK withdrew approximately $350,000 from his Capital Bank Account to pay $10,000 on his mortgage loan at Chase and the remaining funds to pay for his personal lifestyle of dining out, shopping, traveling, and automobile loan payments.

    c. From January 2018 through June 2019, CLARK deposited approximately $110,000 in funds fraudulently obtained from the Victim Companies into his SunTrust Bank personal checking accounts. CLARK withdrew approximately $110,000 from his SunTrust Bank accounts, which he used to pay $20,000 in loan payments for the purchase of a Ford F-250 truck and the remaining funds to pay for his personal lifestyle of dining out, shopping, and traveling.

15. On or about April 4, 2019, CLARK deposited a check from Customer #2 into Victim #1's Capital One account in the amount of $11,160, the proceeds of which he then withdrew through multiple fraudulent checks payable to himself and deposited into his multiple personal bank accounts.

16. These financial transactions involved the proceeds of a specified unlawful activity—that is the mail fraud scheme described in paragraphs 4 through 7 of this Factual Basis.

17. CLARK knew these financial transactions were designed to conceal and disguise the nature, source, ownership, and control of the proceeds of his mail fraud scheme. While conducting these financial transactions, CLARK knew that the property involved in these transactions represented the proceeds of his mail fraud scheme

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

_____  5/24/2021
MICHAEL E. SAVAGE
ASSISTANT UNITED STATES ATTORNEY

**Defendant's Counsel's Signature and Acknowledgment**

I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

_____  DATED: 5-21-21
William R. Terpening, Attorney for Defendant